**Electronically Filed**
**Intermediate Court of Appeals**
**29218**
**13-APR-2011**
**11:22 AM**

NO. 29218

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CIVIL NO. 04-1-0062K

ASSOCIATION OF APARTMENT OWNERS OF KEAUHOU
KONA SURF & RACQUET CLUB, INC. a Hawai'i non-profit corporation,
Plaintiff-Appellee/Cross-Appellant,
v.
ANN SHANNON BOWERS, AS TRUSTEE OF THE ANN SHANNON BOWERS
REVOCABLE TRUST OF 1995, DATED DECEMBER 16, 1995,
JAMES AUSTIN BOWERS, and JOHN and MARY DOES 1-10, and
DOE CORPORATIONS, PARTNERSHIPS, or OTHER ENTITIES 1-10,
Defendants-Appellants/Cross-Appellees.


CIVIL NO. 06-1-0010K

ANN SHANNON BOWERS, AS TRUSTEE OF THE ANN SHANNON BOWERS
REVOCABLE TRUST OF 1995, DATED DECEMBER 16, 1995 and
JAMES AUSTIN BOWERS, Plaintiffs-Appellants/Cross-Appellees,
v.
ASSOCIATION OF APARTMENT OWNERS OF KEAUHOU
KONA SURF & RACQUET CLUB, INC., a Hawai'i non-profit corporation,
Plaintiff-Intervener,
v.
ROBERT A. SCHOOLEY and PHYLLIS J. SCHOOLEY, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT


MEMORANDUM OPINION
(By: Nakamura, C.J., and Fujise, J., with
Foley, J., concurring and dissenting)


Defendants-Appellants/Cross-Appellees Ann Shannon
Bowers (Ann), as Trustee of the Ann Shannon Bowers Revocable
Trust of 1995, Dated December 16, 1995, and James Austin Bowers
(collectively, the Bowers) appeal from the Amended Final Judgment
(Amended Final Judgment) filed on September 9, 2008 in the

Circuit Court of the Third Circuit (circuit court)[1] in consolidated Civil Nos. 04-01-062K and 06-1-010K. Plaintiff-Appellee/Cross-Appellant Association of Apartment Owners of Keauhou Kona Surf & Racquet Club, Inc. (AOAO) cross-appeals from the Amended Final Judgment. The circuit court entered judgment in favor of AOAO and against the Bowers pursuant to AOAO's February 22, 2008, Motion for Summary Judgment (AOAO's MSJ) on AOAO's Complaint in Intervention (AOAO's Complaint in Intervention) filed in Civil No. 06-1-010K on May 2, 2006. The Amended Final Judgment provides the following:

> In accordance with Rule 58 of the Hawaii Rules of Civil Procedure [(HRCP)] and pursuant to the Stipulation for Dismissal with Prejudice of All Claims and All Parties in Civil 04-1-062K filed with this Court on February 1, 2008 [(Stipulation to Dismiss 04-1-062K)], which dismissed all claims between [AOAO], a Hawaii non-profit corporation . . . and [the Bowers] except for claims for attorneys' fees:
>
> And further pursuant to the Findings of Facts [sic], Conclusions of Law, and Order filed on April 22, 2008 ("Order") and the Consolidated Order Granting [AOAO] and [the Bowers'] Motion[s] for Award of Attorneys' Fees and Costs filed July 10, 2008 [(Order Re Fees/Costs)], Judgment is hereby entered in favor of [AOAO] and against the Bowers as to [AOAO's] Complaint [in] Intervention in Civil Number 06-1-101K as follows:
>
> 1. Summary Judgment is hereby entered in favor of [AOAO] and against all other Defendants as to [AOAO's MSJ] seeking declaratory relief and that all identified unauthorized and illegal alterations and additions made to the common elements at the Project over the past thirty years, as identified in Schedules "A" and "B" (attached as Exhibit "F" to said motion), have been properly approved by the owners at the Project through a Grandfathering Amendment in accordance with [AOAO's] Restated Declaration and Amended Bylaws, as well as Hawaii Statutory law.
>
> 2. [AOAO] shall amend the Restated Declaration and Condominium Map(s), where appropriate, to accurately reflect the alterations and amendments as identified on Schedule "B."
>
> 3. [AOAO] is entitled to an award of attorneys' fees and costs in the amount of $3,744.00 in filing a reply memorandum in support of [AOAO's MSJ] pursuant to the Order filed on April 22, 2008.
>
> 4. [AOAO] substantiated its claims against the Bowers as more fully set forth in the Order. . . . Accordingly, [AOAO's] Motion for Attorneys' Fees and Costs is granted and the Bowers shall pay [AOAO's] reasonable attorneys' fees in the amount of $121,778.51 and costs in the amount of

---

[1] The Honorable Ronald Ibarra presided.

$1,359.49 pursuant to the [Order Re Fees/Costs] filed on July 10, 2008.

5. The Bowers substantiated their claims against [AOAO] as more fully set forth in the Order. . . . Accordingly, the Bowers' Motion for Award of Attorney's Fees and Costs is granted and [AOAO] shall pay the Bowers reasonable attorneys' fees in the amount of $122,593.00 and costs in the amount of $7,026.62.

6. As both parties have substantiated their claims pursuant to Section 514A-94 of the Hawaii Revised Statutes [(HRS)] with a total of $123,138.00 in attorneys' fees and costs awarded to [AOAO] and $129,691.62 in attorneys' fees and costs awarded to [the Bowers];

IT IS HEREBY ORDERED; the difference in the awards being $6,481.62 is GRANTED in favor of the Bowers. The award of $6,481.62 granted in favor of [the] Bowers is hereby reduced by [AOAO's] award of attorneys' fees and costs in the amount of $3,744.00 in filing a reply memorandum in support of [AOAO's MSJ] on its Complaint in Intervention. Accordingly, the difference in the awards being $2,737.61 is GRANTED in favor of the Bowers.

This Court expressly directs that this Judgment is entered as a final judgment pursuant to Rule 54(b) of the [HRCP] as there is no just reason for delay and it resolves all claims against all parties of this consolidated action Civil No. 04-1-062K and Civil No. 06-1-010K.

On appeal, the Bowers contend the circuit court erred in:

(1) denying their December 18, 2007, "Motion for Summary Judgment as to Civil No. 04-1-0062K" (Bowers' 12/18/07 MSJ) based on a finding that a "scintilla of evidence" supporting AOAO's opposition to the motion was sufficient to deny the motion;

(2) finding that certain emails submitted by them in support of their July 2, 2007 "Motion for Summary Judgment as to Civil No. 04-1-062K" (Bowers' 7/2/07 MSJ) were inadmissible for lack of foundation and in denying the motion;

(3) issuing the April 22, 2008, "Findings of Facts, Conclusions of Law and Order Granting [AOAO's MSJ]" (FOF/COL/Order);

(4) denying their May 2, 2008, motion for clarification of the FOF/COL/Order (Bowers' Motion to Clarify FOF/COL/Order);

(5) issuing the Order Re Fees/Costs;

3

(6) denying their July 15, 2008, motion for reconsideration of the Order Re Fees/Costs (Bowers' Motion to Reconsider Order Re Fees/Costs);

(7) issuing the Amended Final Judgment;

(8) making findings in the FOF/COL/Order regarding the parties' "Settlement Agreement" in excess of the court's subject matter jurisdiction because the "Settlement Agreement" was not directly related to AOAO's Complaint in Intervention filed May 2, 2006, in Civil No. 06-01-010K;

(9) finding that the "Settlement Agreement" precluded them from challenging the validity and enforceability of a "grandfathering amendment" (Grandfathering Amendment) to the "Restated Declaration of Condominium Property Regime of Keauhou Kona Surf & Racquet Club, Inc." (Restated Declaration) and the "Amended Bylaws of Association of Apartment Owners of Keauhou Kona Surf & Racquet Club, Inc., a Hawaii Nonprofit Corporation" (Amended Bylaws) (the Restated Declaration and Amended Bylaws are referred to collectively as the "governing documents");

(10) finding that the terms of the "Settlement Agreement" precluded them from opposing AOAO's MSJ;

(11) finding that they waived their legal right to challenge the validity and enforceability of AOAO's Restated Declaration and Amended Bylaws by the terms of the "Settlement Agreement";

(12) assuming subject matter jurisdiction regarding the validity of the Restated Declaration and amendments to the Restated Declaration and Amended Bylaws;

(13) finding that the Restated Declaration, amendments to the Restated Declaration and Amended Bylaws and the Grandfathering Amendment are valid and were properly adopted;

(14) retroactively applying HRS §§ 514A-11(11), 514A-82(b)(2), 514B-22, 514B-23, 514B-109, 514B-140(b), and 514B-140(c);

(15) authorizing AOAO to convert common elements to limited common elements, thereby altering AOAO's owners' undivided interest in the whole, contrary to Hawai'i law.

(16) awarding attorney's fees to AOAO, including attorney's fees for preparing and filing a reply memorandum in support of AOAO's MSJ;

(17) reducing the amount of attorney's fees and costs awarded to the Bowers and failing to provide an explanation for the reduction in the attorney's fees and costs requested by the Bowers; and

(18) denying their August 20, 2008, "Motion for Findings of Fact and Conclusions of Law for Order Denying Motion for Reconsideration of [Order Re Fees]" (Bowers' Motion for FOF/COL Re Order Denying Bowers' Motion to Reconsider Order Re Fees/Costs).

The Bowers request that we do the following:

1.    Remand this case for entry of an order granting the Bowers' 12/18/07 MSJ;[2/]

2.    Remand this case for entry of an order granting the Bowers' 7/2/07 MSJ;[3/]

3.    Remand this case for entry of an order denying AOAO's MSJ;

4.    Remand this case for entry of an order denying the FOF/COL/Order;

5.    Remand this case for entry of an order granting the Bowers their reasonable attorney's fees in the amount requested in their May 23, 2008, Motion for Award of Attorney's Fees and Costs (Bowers' Fees/Costs Motion);

6.    Reverse and vacate the Amended Final Judgment;[4/]

_____

[2/]    The Bowers refer to a motion for summary judgment (MSJ) filed on February 1, 2008, but no such motion was filed on that date. However, the circuit court's "Order Denying [the Bowers'] Motion for Summary Judgment as to Civil No. 04-1-0062K," filed on December 18, 2007 (Order Denying Bowers' 12/18/07 MSJ) was filed on February 1, 2008. We deduce that the Bowers mean to refer to the Bowers' 12/18/07 MSJ.

[3/]    The Bowers refer to a motion for summary judgment filed on August 9, 2007, but no such motion was filed on that date. However, the circuit court's "Order Denying [the Bowers'] Motion for Summary Judgment as to Civil No. 04-1-0062K Filed on 7/2/2007" (Order Denying Bowers' 7/2/07 MSJ) was filed on August 9, 2007. We deduce that the Bowers mean to refer to Bowers' 7/2/07 MSJ.

[4/]    The Bowers mistakenly state the date of the Amended Final Judgment as September 8, 2008, instead of the correct date of September 9, 2008.

5

7.   Reverse the May 27, 2008, order denying their Motion to Clarify FOF/COL/Order (Order Denying Bowers' Motion to Clarify FOF/COL/Order);

8.   Reverse the Order Re Fees/Costs;

9.   Reverse the August 11, 2008, order denying their motion for reconsideration of the Order Re Fees/Costs (Order Denying Bowers' Motion to Reconsider Order Re Fees/Costs);  and

10.   Reverse the September 8, 2008, order denying their Motion for FOF/COL Re Order Denying Bowers' Motion to Reconsider Order Re Fees/Costs (Order Denying Bowers' Motion for FOF/COL Re Order Denying Bowers' Motion to Reconsider Order Re Fees/Costs).

On cross-appeal, AOAO contends the circuit court erred by awarding attorney's fees and costs to the Bowers and requests that we reverse the portions of the Order Re Fees/Costs and the Amended Final Judgment awarding such fees and costs.

For the reasons set forth below, we vacate the portions of the Amended Final Judgment that awarded attorney's fees and costs to AOAO and that awarded attorney's fees and costs to the Bowers, and we remand the case for further proceedings.  We affirm the Amended Final Judgment in all other respects.

## I.   BACKGROUND

This appeal and cross-appeal arise out of two civil cases, Civil Nos. 04-1-062K and 06-1-010K, which the circuit court consolidated.  The circuit court summarized the factual background in this case in its FOF/COL/Order as follows:

FINDINGS OF FACT

. . . .

A.   Parties

1.   [AOAO] is a Hawaii nonprofit corporation comprised of the apartment owners of the Keauhou Kona Surf & Racquet Club (KKSRC) and existing under and by virtue of Chapters 514A and 514B, [HRS], as amended, with its principal place of business in the County and State of Hawaii.

2.   The KKSRC condominium project consists of 193 apartments in several buildings located in Keauhou, North Kona, County and State of Hawaii (the "Project").

3.   Defendants Bowers are the owners of three apartments at the Project.  Only Apartment Nos. 50 and 180 are relevant to the instant lawsuit.

6

4.     The Bowers purchased their first apartment (Apartment No. 180) in June 1995 and purchased Apartment 50 in 2000.

5.     Defendants Robert and Phyllis Schooley (collectively, "the Schooleys") are the owners of Apartment No. 6 in the Project.

B.     Governing Documents

6.     All apartments in the Project are subject to the [Restated Declaration] and the [Amended Bylaws].

     a.     Restated Declaration, As Amended

7.     The terms "Apartment", "Common Elements" and "Limited Common Elements" are defined in Sections 4, 5 and 6 of the Restated Declaration in pertinent part as follows:

> a.     Apartment:  "There are hereby established one hundred ninety-three (193) freehold estates in the spaces within the perimeter walls, floors and ceilings of the 193 apartments in said buildings.  The 193 apartments shall not be deemed to include the undecorated or unfinished surfaces of the perimeter walls or of the interior load-bearing walls, the floors and perimeter ceilings surrounding each apartment . . . all of which are common elements as provided in Paragraph 5 hereof."
>
> b.     Common Elements:  "Common elements include, among other things. 'All foundations, columns, girders, beams, supports, main walls, roofs, entrances and exists [sic] of said buildings."
>
> c.     Limited Common Elements:  "[L]imited common elements of KKSRC includes 'All other common elements of the project which are rationally related to less than all of said apartments shall be limited to use of such apartments.'"

8.     Section 9 of the Restated Declaration states in part:

> The purposes for which said buildings and other improvements and each of the apartments are intended and shall be restricted as to use are as follows:
>
> a.     The common interest and easements appurtenant to each apartment shall have a permanent character, shall not be altered without the consent of all owners of apartments affected thereby and Lessor as expressed in an amendment to this Declaration duly recorded . . . .
>
> b.     The common elements shall remain undivided, and no right shall exist to partition or divide any part thereof except as provided by said Condominium Property Act.
>
> c.     Each apartment owner may use the common elements in accordance with the purposes for which they were intended without hindering or encroaching upon the lawful right of the other apartment owners, subject to the right of the board of directors, herein called "Board," upon the approval of the owners of

7

seventy-five per cent of the common interests, to change to use of the common elements . . . .

9.    Section 10 of the Restated Declaration states in part that "operation of the project and maintenance, repair, replacement and restoration of the common elements, and any additions and alterations thereto, shall be in accordance with the provisions of said Condominium Property Act H.R.S. Chapter 514A, this Declaration, and the Bylaws. . . ."

10.    Section 16 of the Restated Declaration, states, in pertinent part:

> Restoration or replacement of the project or of any building, swimming pool, or other facility or construction of any additional building or structural alteration or addition to any structure, different in any material respect from said Condominium Maps of the protect, shall be undertaken by the Association or any apartment owners only pursuant to an amendment of the Declaration, duly executed by or pursuant to the affirmative vote or **written consent of not less than seventy-five percent (75%) of the apartment owners,** provided, however, that any such restoration, replacement, or construction shall not alter any apartment owner's undivided interest in the common elements of the project.  Any such restoration, replacement or construction shall be in accordance with complete plans and specifications therefore first approved in writing by the Board, and promptly upon completion of such restoration, replacement or construction, the Association shall duly record or file of record such amendment together with a complete set of floor plans of the project as so altered, certified as built by a registered architect or professional engineer.

> b.    Amended Bylaws

11. Sections 8.03 and 8.06 of the Amended Bylaws provide in pertinent part:

> Bylaw Section 8.03:  **No member** or occupant of a member's apartment **shall:**  (1) Erect or place in the project any building, structure, fence or walls, or **make any addition or alteration to any common element of the project . . . except** in accordance with plans and specifications, including a detailed plot plan prepared as required by the board of directors and also **approved by a majority of the apartment owners,** or by any larger percentage required by law or the declaration and by all owners of apartments thereby directly affected; (2) Place, store or maintain in the hall, lobbies, stairways, walkways, grounds, parking areas, recreational areas, or other common elements any furniture, packages or objects of any kind or otherwise obstruct transit through the common elements.

> Bylaw Section 8.06:  **No member shall do any work which could jeopardize the soundness or safety of the project, reduce the value thereof, impair any easement or add any material structure without the prior consent of 75 percent of the members,** together with the consent of all members whose apartments or appurtenant limited common elements are directly

affected. **Nonmaterial structural additions to the common elements** or additions to or alternations of an apartment made within the apartment, or within a limited common element appurtenant to and for the exclusive use of the apartment, **shall require approval only by the board and the percentage of the members as may be required by the declaration or bylaws.**

C.   Statutory Requirements

12.   H.R.S. § 514A-88 provides in part that "each apartment owner . . . shall comply strictly with the bylaws and . . . the covenants, conditions, and restrictions set forth in the declaration."  In turn, H.R.S. § 514A-89 states that:

**(a)   No apartment owner shall do any work which could jeopardize soundness or safety of the property, reduce the value thereof,** or impair any easement or hereditament.

**(b)   No apartment owner shall add any material structure . . . without first obtaining in every such case the consent of seventy-five percent of the apartment owners, together with the consent of all apartment owners whose apartments or limited common elements appurtenant thereto are directly affected.**

**(c)   Nonmaterial structural additions to the common elements,** including, without limitation, additions to or alterations of an apartment made within the apartment or within a limited common element appurtenant to and for the exclusive use of the apartment **shall require approval only by the board of directors** of the association of apartment owners **and such percentage,** number, or group of apartment owners **as may be required by the declaration or bylaws.**

13.   [AOAO] filed a law suit [Complaint for Declaratory and Injunctive Relief, Breach of Covenants and Damages (AOAO's 04-1-062K Complaint)] against the Bowers arising out of the unauthorized and illegal alterations and additions made to Apartments 50 and 180 . . . . .

D.   The Bowers['] Apartments

14.   The Bowers made the following additions or alterations to the common elements surrounding Apartment No. 180:  (a) poured a new cement foundation and expanded the kitchen footprint by approximately 21 sq. ft.; (b) used "6 X 6 structural posts for the new kitchen wall that is approximately 14" thick; (c) changed the existing jalousie Makai windows with vinyl double hung windows and storm shutters with a coordinated lanyard operating system; (d) rebuilt the Makai second floor wall so that it is "approximately 8" thick"; (e) used nonconforming exterior siding for the rebuilt Makai wall; and, (f) constructed a roof overhang over the expanded Makai kitchen wall.

15.   The Bowers made the following additions or alterations to the common elements surrounding Apartment 50: (a) constructed a new roof overhang above the first floor lanai sliding glass door; (b) extended the first floor concrete lanai beyond its original size by approximately 67.5 square feet; and (c) constructed and placed a storage cabinet outside their apartment within the common elements.

9

16.    The Bowers admit that:   (a) they performed alterations and additions to Apartment Nos. 50 and 180;  (b) there [sic] alterations and additions involve converting common elements to limited common elements; (c) they only obtained approval of the [AOAO] Board of Directors [(the Board or the AOAO Board)] concerning these alterations and improvements; and (d) they never received the requisite owner approval and consent required by [AOAO's] governing documents and Hawaii law.

(Emphasis in original; footnotes, record references, and brackets in original omitted; some ellipsis points added.)

## A.    AOAO'S 04-1-062K COMPLAINT

On May 6, 2004, AOAO filed AOAO's 04-1-062K Complaint. AOAO alleged that the Bowers' Units 50 and 180,[5] like all units in the Project, were subject to the governing documents.  AOAO alleged that the Bowers had violated the terms of the governing documents and HRS §§ 514A-88 and 514A-89 by (1) "caus[ing] alterations and modifications to be made to the common elements, limited common elements, and to Apt. 50, including building a roof, pouring a concrete slab, and removing interior walls without building permits or approval of the Board of Directors [(the Board)] and apartment owners of KKSRC[;]" and (2) "caus[ing] alterations and modifications to be made to the common elements and to Apt. 180, including building a new roof, pouring a concrete slab, expanding the interior space of the apartment into the common area, and replacing windows with nonconforming windows, without approval of [the Board] and apartment owners of KKSRC[.]"  AOAO requested, among other things, that the Bowers be ordered to remedy all violations of the governing documents by removing all non-conforming alterations and modifications to comply with the governing documents; that the circuit court issue an injunction restraining and enjoining the Bowers from continued and further breaches of the governing documents and applicable law; and that AOAO be awarded its attorney's fees and costs.

---

[5]   The properties at the Keauhou Kona Surf & Racquet Club (KKSRC) condominium project (the Project) owned by the Bowers are variously referred to in the proceedings below as, e.g., "Apartment Nos. 50 and 180,"  and "the apartments owned by the Bowers."  The properties at KKSRC owned by other people are referred to as "apartment[s]," "units," and "apartment unit[s]." For the sake of simplicity, in our background summary and discussion of this case, we refer to the Bowers' properties as "Units 50 and 180" and other KKSRC owners' properties as "units."

On May 25, 2004, the Bowers filed an answer to AOAO's 04-1-062K Complaint. As defenses to AOAO's 04-1-062K Complaint, the Bowers alleged, among other things, that AOAO's failure to enforce the restrictions in the governing documents against other unit owners precluded AOAO from enforcing the restrictions against the Bowers based on the theories of estoppel, acquiescence, waiver, and abandonment. The Bowers also asserted a counterclaim against AOAO.[6]

### B. THE BOWERS' 06-1-010K COMPLAINT

On April 16, 2007, the Bowers filed a "First Amended Complaint for Declaratory and Injunctive Relief in Civil No. 06-1-010K Filed January 13, 2006" (Bowers' 06-1-010K Complaint), against the Schooleys, who owned a unit in the Project, for converting common elements to limited common elements without the consent of KKSRC owners, in violation of the Restated Declaration and the HRS.

### C. AOAO'S MOTION TO INTERVENE AND COMPLAINT IN INTERVENTION

On March 23, 2006, AOAO filed a motion to intervene in Civ. No. 06-1-010K. The circuit court granted the motion.

On May 2, 2006, AOAO filed a Complaint in Intervention, seeking, among other things, a global resolution and declaratory relief as to any identified improper alterations and additions made to the common elements at AOAO by KKSRC owners, including improper alterations and additions made by the Bowers and the Schooleys, in accordance with the laws of the State of Hawai'i and the governing documents.[7] AOAO also asked for attorney's

---

[6] The counterclaim was subsequently dismissed pursuant to an October 25, 2006, "Settlement, Release, and Indemnity Agreement" entered into by the parties. The counterclaim and its dismissal are not pertinent to this appeal and will not be further discussed.

[7] The changes the Bowers, the Schooleys, and other KKSRC unit owners made to KKSRC units are variously referred to in the proceedings below as, e.g., "alterations and additions," "alterations and modifications," "alterations and improvements," "improvements," and "alterations and rebuild." For the sake of simplicity, we generally refer to the changes as "alterations and additions" in our summary of the background and discussion of this case. The Complaint in Intervention only referred specifically to alterations and additions made by the Schooleys, but the alterations and additions by the Bowers were included by the reference to "similarly situated modifications caused by other KKSRC owners."

fees and costs. On May 30, 2006, the Bowers filed a response requesting that the Complaint in Intervention be dismissed and the relief requested be denied.

### D.   THE BOWERS' 7/2/07 MSJ

In the Bowers' 7/2/07 MSJ, they argued, among other things, that AOAO was estopped from maintaining its action as set forth in AOAO's 04-1-062K Complaint because (1) the Board approved the alterations and additions of Units 50 and 180, and (2) AOAO could not enforce against them provisions of the governing documents that it had failed to enforce against other owners of KKSRC units who had collectively committed over 1,000 violations. In support of the Bowers' assertion that the Board had approved their alterations to Units 50 and 180, they attached as exhibits purported copies of email exchanges between Ann and "Tom/Barbara Koontz" (the Koontz e-mails). In an attached affidavit, Ann identified the e-mails and stated that they represented e-mail correspondence between her and Tom Koontz (the president of AOAO) regarding AOAO's approval of improvements to Units 50 and 180.

On July 17, 2007, AOAO filed a memorandum in opposition. AOAO argued that the estoppel doctrine did not apply, there was no proof of reasonable reliance by the Bowers, statutory law did not support the Bowers' argument that the governing documents were unenforceable, the Bowers were judicially estopped from claiming that the governing documents were unenforceable, and there was no proof that the benefits of the governing documents had been abandoned. AOAO also argued that the copies of the Koontz e-mails the Bowers attached to their motion were inadmissible.

On July 20, 2007, the Bowers filed a reply to the memorandum in opposition. They argued, among other things, that the Koontz e-mails were admissible because Ann had authenticated them by identifying them, Ann's name and e-mail address were on them, Tom Koontz's e-mail address appeared in them, and the e-mails contained information known to Ann. The Bowers maintained that the Koontz e-mails were not hearsay because, among other things, Tom Koontz was dead and therefore unavailable, and the e-

mails constituted admissions because at the time Tom Koontz sent them, he was President of AOAO and, as such, an agent of AOAO.

On July 25, 2007, the circuit court held a hearing on the Bowers' 7/2/07 MSJ and orally found: "[T]here's a genuine issue of material fact as to the scope of approval, if any, given in the Koontz e[-]mails. The Court certainly finds there's a genuine issue of material fact as to the foundation for the admission of the Koontz e-mails and also whether the Bowers' reliance on the Koontz e-mails [was] reasonable." The circuit court then denied the Bowers' 7/2/07 MSJ.

On August 9, 2007, the circuit court filed its Order Denying Bowers' 7/2/07 MSJ.

### E. CASES CONSOLIDATED

On July 28, 2006, by "Stipulation to Consolidate Cases; Order," the circuit court consolidated Civil No. 04-1-062K with Civil No. 06-1-010K.

### F. AOAO'S INVESTIGATION INTO KKSRC OWNER VIOLATIONS

The circuit court provided the following factual background in the FOF/COL/Order regarding AOAO's Grandfathering Amendment:

> E.     [AOAO's] Investigation in Violations by KKSRC Owners
>
> 17.     Sometime during early spring 2005, [AOAO] began informal discussions regarding alterations and additions made to the common elements at the Project by other KKSRC owners in violation of [AOAO's] governing documents and statutory law.
>
> 18.     On or about July 7, 2005, the Bowers sent demand letters to numerous apartment owners at the Project requiring the removal of all unapproved alterations and additions to the common elements at the Project or face being identified in an enforcement action.
>
> 19.     On or about July 11, 2005, the Bowers provided [AOAO] with a spreadsheet listing approximately 117 apartments at the Project . . . that violate the provisions relating to the common elements contained in the [governing documents] (the "Initial List of Violations").
>
> 20.     Based upon the Bowers' allegation of widespread violations by other owners at the Project, [AOAO] instituted the following formalized process(es):
>
> > (1)     Identification of all alterations and additions to the common elements that have occurred at [the Project] over its approximate 30-year existence that may be in violation of [AOAO's] governing documents and/or statutory requirements;

13

(2)    Notification to apartment owners of the global resolution process and that [AOAO] is offering amnesty to owners for their participation and reporting of any interior alterations and additions of the common elements they have made or are aware of;

(3)    Determination of whether any of the identified alterations and additions to the common elements are material or nonmaterial in nature, and whether any of the alterations and additions jeopardize the structural integrity of the project; and finally;

(4)    Presentation of the identified alterations and additions of the common elements to the owners at the Project, and requesting that they vote on whether to approve the alterations and additions to remain by amending the governing documents, where appropriate.

21.    In furtherance of the aforementioned process, a series of lists were developed in accordance with the approval criteria set forth in the [governing documents], as well as all relevant statutory requirements, to be utilized in evaluating every identified unauthorized and illegal alterations and additions to the common elements at the Project, including the apartments owned by the Bowers ("List of Alterations").
.  .  .  .

22.    The Lists of Alterations were provided to the Bowers for review and comment.  In response, the Bowers provided an addendum to their initial list of 117 violations, which contained over eleven hundred alleged violations at the Project (the "Addendum").

23.    [AOAO] performed at least three separate site investigations as to every apartment identified by the Bowers on their initial List of Violations and the Addendum before finalizing the Lists of Alterations for submission to all apartment owners.

F.    Written Approval of the Grandfathering Amendment by the KKSRC Owners

24.    After categorizing the identified unauthorized and illegal alterations and additions to the common elements at the Project using the criteria set forth in the Lists of Alterations, [AOAO] prepared two lists for submission to the owners of the Project for approval of the Grandfathering Amendment; one for non-material alterations and additions that requires not less than 50% owner approval and another for material alterations and additions that requires not less than 75% owner approval (Schedules "A" and "B", respectively).

25.    A Written Approval of Alterations/Additions, including Schedules "A" and "B", was sent to every owner at the Project in early December 2007 requesting that they vote on whether to approve the identified unauthorized and illegal alterations and additions and permit said alterations and additions to remain by amending the governing documents, where appropriate ("Consent Form").

26.    [AOAO] through its managing agent, Certified Management, Inc. ("CMI"), collected all Consent Forms turned in by the owners at the Project and tabulated the percentage approval for every apartment listed on Schedules "A" and "B"

14

> by adding the common interest percentage ("CIP") for each apartment unit that casted [sic] a vote.

> 27. Every apartment unit identified on Schedule "A" received not less than 50% owner approval and every apartment unit identified on Schedule "B" received not less than 75% owner approval, including the apartments owned by the Bowers, which are the subject of Civil No. 04-1-062K. More particularly, the alterations and additions made to Apartment 50 (identified on Schedule "A") received not less than 79% owner approval and the alterations and additions made to Apartment 180 (identified on Schedule "B") received not less than 77% owner approval.

(Record reference and citations omitted.)

## G.    BOWERS' 12/18/07 MSJ

In the Bowers' 12/18/07 MSJ, they argued that AOAO should not be allowed to bring the claims in AOAO's 04-1-062K Complaint because AOAO had abandoned and waived any right it may have had to enforce the governing documents against them when AOAO allowed or otherwise acquiesced in hundreds of alterations and additions made to other KKSRC units in violation of the governing documents. The Bowers asserted that in bringing about the Grandfathering Amendment, AOAO had admitted that at least 266 alterations and additions in violation of the governing documents had been made to 126 KKSRC units since 1978.

On January 2, 2007, AOAO filed a memorandum in opposition to the Bowers' 12/18/07 MSJ, arguing that the Bowers failed to introduce

> any admissible evidence, let alone clear and convincing evidence, to demonstrate that past violations have been so substantial or of such magnitude that the restrictions contained in the [governing documents] are [sic] no longer have value or usefulness, or that they have become so burdensome as to defeat the object and purpose of the restrictive covenant. On the contrary, the continued existence of the restrictions is essential to the orderly operation and governance of the KKSRC project and the purpose of the restrictions of the [governing documents] can still be accomplished and substantial benefit will inure to the benefit of all apartment owners at the Project. Lastly, [the Bowers] have offered no explanation on how a condominium project's [governing documents] can be abandoned when they are required by statute. Nor, have they offered any argument on how the rights, obligations and protections created by [HRS] Chapter 531A can be nullified by the facts of this case. Therefore, no abandonment has occurred, and the governing documents and statutory law are enforceable under appropriate circumstances.

15

AOAO further argued that there was no evidence that it had waived the benefits of the governing documents. AOAO maintained that there was nothing in the record to establish that it

> clearly knew about each and every past violation and, based upon that knowledge, intentionally chose not to enforce the [governing documents] as against the offending apartment owners. In contrast, by [the Bowers'] own admission, there are substantial and disputed factual issues pertaining to the number and significance of other additions and alterations of common elements existing at the Project compared to the ones constructed by [the Bowers].

AOAO asserted that the Bowers failed to introduce any facts or legal authority excusing their conduct from enforcement under HRS §§ 514A-88 and 514A-89 -- the statutes cited in AOAO's 04-1-062K Complaint as support for the complaint. Finally, AOAO argued that the Bowers were

> judicially estopped from taking contradictory positions on whether [AOAO's] governing documents are defective and therefore unenforceable. . . . [the Bowers] have filed three separate lawsuits against [AOAO] and [the Schooleys] for claimed violations of the Restated Declaration. In these lawsuits, [the Bowers'] allegations that the terms of the Restated Declaration can be enforced when violated are deemed judicial admissions. More particularly, [the Bowers] admit that all apartment owners are subject to the Restated Declaration. However in this lawsuit, [the Bowers] contend that the Restated Declaration has been abandoned and thus, unenforceable. Clearly, judicial estoppel precludes such inconsistent positions.

The Bowers filed a reply to the memorandum in opposition, in which they argued that AOAO had failed "to present specific facts, backed by evidence, showing that a genuine issue of material fact exists." Specifically, the Bowers maintained that AOAO had not presented evidence refuting that it allowed substantial and general violations of the governing documents. The Bowers argued that AOAO waived its rights to enforce the governing documents against them and that AOAO had actual and constructive knowledge of non-conforming alterations and modifications by unit owners in violation of the governing documents through its agent, the Board, because the Board had actively discussed and approved numerous violations upon the written request of unit owners. The Bowers further argued that HRS §§ 514A-88 and 514A-89 did not prevent the circuit court from applying the doctrines of abandonment or waiver to the facts of the case. Last, the Bowers maintained that they were not

16

judicially estopped from claiming that AOAO had abandoned or waived the provisions it was attempting to enforce because the Bowers were not claiming that AOAO had abandoned the governing documents in their entirety, but only particular provisions of those documents.

On January 10, 2008, the circuit court held a hearing on the Bowers' 12/18/07 MSJ. The Bowers' counsel clarified that allegedly some unit owners had gotten Board approval for alterations and additions to their units, but had not gotten owner approval as required by the governing documents. Counsel for AOAO responded that contrary to the Bowers' assertions, the Bowers were seeking wholesale invalidation of the governing documents with respect to alterations and additions. AOAO's counsel argued that there were at least genuine issues of material fact regarding the extent to which the Board had approved the Bowers' request to alter units 50 and 180. The circuit court orally denied the Bowers' 12/18/07 MSJ, finding: "[T]here's a genuine issue of material fact. As counsel know that credibility, even a scintilla of evidence raising a trivial dispute on a material issue is sufficient to deny a motion for summary judgment."

On February 1, 2008, the circuit court filed the Order Denying Bowers' 12/18/07 MSJ.

H.    SETTLEMENT AGREEMENT

In the FOF/COL/Order, the circuit court summarized the following factual background regarding the settlement agreement reached by the parties in 2008 and the Stipulation to Amend Order Setting Pretrial Deadlines (Stipulation to Amend):

H.    Settlement Agreement

a.    Factual History

34.    In late December 2007, counsel for the parties initiated informal settlement discussions concerning Civil No. 04-1-062K ("Consolidated Actions").

35.    On or about January 22, 2008, counsel for the Bowers stated that his clients were agreeable to the following settlement proposal: (1) dismissal of Civil No. 04-1-0062K with prejudice; (2) [the Bowers] would not oppose [AOAO's] "grandfathering" proposal; (3) all parties would dismiss their claims in Bowers v. Schooley; and (4) claims for attorneys' fees and costs would be reserved,

17

subject to any previous agreement by stipulation of the parties.

36. Counsel for [the] Bowers never demanded or placed any limitations and/or restrictions concerning [AOAO's] motion pertaining to the "grandfathering" proposal.

37. Counsel for [AOAO] revised the settlement offer and, on or about January 24, 2008, sent all counsel a binding letter of settlement containing the essential and material settlement terms between the parties in the consolidated action ("Settlement Letter").

38. In furtherance of the compromise and settlement in the Consolidated Actions, the parties agreed, among other things, that:

In furtherance of [AOAO's Complaint in Intervention] seeking a global resolution of all listed improvements/alterations constructed in violation of [AOAO']s governing documents, including improvements/ alterations which are the subject of Civil No. 04-1-062K, [the] Bowers agree[] not to oppose or otherwise obstruct [AOAO's] legal efforts to obtain judicial approval of the owners' approval of the alterations/additions and their consent to amendment of the Declaration of Condominium Property Regime and Condominium Map of KKSRC.

39. Although counsel for [the Schooleys] signed the Settlement Letter, counsel for the Bowers did not. Instead, counsel for the Bowers requested several material changes and additions be made to the terms expressed in the Settlement Letter.

40. Counsel for the Bowers never requested any modifications, limitations, restrictions and/or revisions to the settlement language concerning [AOAO's] "grandfathering" motion nor did the Bowers demand that, as a condition of settlement, they be entitled to review and approve [AOAO's] motion pertaining to the Grandfathering Amendment.

41. The Bowers specifically agreed not to oppose or otherwise obstruct [AOAO's] legal efforts to obtain judicial approval of the Grandfathering Amendment. All requested changes by the Bowers were incorporated into a revised Settlement Letter that was sent to all counsel on January 25, 2008 (Revised Settlement Letter).

42. Counsel for the Bowers and Schooleys immediately signed and faxed back the fully executed signature page that same day.

43. In furtherance of the Revised Settlement Letter, counsel for [AOAO] prepared a more detailed settlement agreement and sent it to all counsel for review and approval ("Release and Settlement Agreement"). Although counsel for the Schooleys signed the Release and Settlement Agreement, counsel for the Bowers objected and demanded that certain major and minor changes be made, including a provision regarding "future action by [AOAO]" that was never agreed upon by the parties and therefore, was deemed unacceptable.

44. Upon review of the requested changes, counsel for [AOAO] revised the Release and Settlement Agreement to incorporate only those changes that were consistent with the

terms and conditions set forth in the Revised Settlement
Letter.

45.   Counsel for the Bowers sent a subsequent letter
on February 19, 2008 responding to [AOAO's] position
regarding the revised Release and Settlement Agreement.   In
that letter, counsel for [the] Bowers freely admits that his
clients agreed not the [sic] prepare an opposition to
[AOAO's MSJ] nor will they [the Bowers] "argue against your
motion or other pleading before the Court on the
grandfathering issue."

b.    Procedural History Regarding Settlement in the
      Consolidated Actions

46.   In furtherance of the Settlement Agreement
between the parties, [the Stipulation to Amend] was
submitted to this Court for review and approval . . . .   The
Stipulation to Amend specifically states, as follows:

WHEREAS, the parties have agreed to settle and dismiss
Civil No. 04-1-062 with prejudice and to partially
dismiss Civil No. 06-1-010K with prejudice.
Accordingly, the only claims remaining in the
consolidated action are those claims asserted in
[AOAO's Complaint in Intervention], which seeks a
global resolution of all prior improvements/
alterations constructed in violation of [AOAO's]
governing documents;

WHEREAS, [AOAO] intends to file a motion for
summary judgment as to [AOAO's Complaint in
Intervention] seeking approval of the owners'
approval of the alterations/additions and
consent to amendment of the Declaration of
Condominium Property Regime and Condominium Map
of KKSRC . . . , which, in furtherance of the
settlement reached by the parties, shall not be
opposed by any of the Defendants to this
consolidated action.

47.   In furtherance of the Stipulation to Amend, a
status conference was held on January 31, 2008 wherein this
Court indicated that the sole basis for signing, approving
and ordering the Stipulation to Amend is that, in
furtherance of the settlement reached between the parties,
[AOAO's MSJ] will not be opposed.

48.   Counsel for the Bowers assured this Court that
the Bowers would not file an opposition to [AOAO's MSJ].

49.   The Stipulation to Amend was signed and filed on
February 1, 2008 and the hearing date for [AOAO's MSJ] was
set for March 11, 2008 at 8:00 a.m.   In furtherance of the
settlement agreement, the [Stipulation to Dismiss 04-1-062K]
was filed.

50.   A Stipulation for Partial Dismissal with
Prejudice of Civil No. 06-1-010K and Order was filed, which
specifically states that [AOAO's] Complaint in Intervention
shall remain.

(Record citations omitted; emphasis in original; some brackets in
original and some added.)

### I.   AOAO'S MSJ

In AOAO's MSJ filed on February 22, 2008, AOAO asked the circuit court to grant summary judgment in its favor in Civil No. 06-1-010K.  AOAO stated that in AOAO's Complaint in Intervention, it was seeking "a global resolution of the identified unauthorized and illegal alterations and additions made to the common elements at the Project by the KKSRC owners over the past thirty years, including those unauthorized and illegal alterations and additions made by the Bowers and Schooleys."  AOAO asserted that the Bowers had made "unauthorized and illegal alterations and additions to" Units 50 and 180.  AOAO argued that it was entitled to summary judgment on the basis that it had

> achieved a "global resolution" concerning the unauthorized
> and illegal alterations and additions made to the common
> elements at the Project over the past thirty years . . . by
> obtaining the requisite percentage owner approval and
> consent necessary to approve the identified alterations and
> additions in accordance with the laws of the State of
> Hawaii, and [the governing documents] ("Grandfathering
> Amendment").

AOAO stated that there was "an actual case or controversy as to whether [it was] entitled to the relief requested in its Complaint in Intervention" because the Bowers had contended that AOAO "failed to take any action to implement a 'global' resolution to resolve the illegal alterations and additions and therefore [was] estopped from doing so."

The Bowers filed a memorandum in opposition to AOAO's MSJ, arguing the following:

> 1) while [the Bowers] agreed to allow the AOAO to pursue
> court approval of its grandfathering proposal, [the Bowers]
> did not contemplate that the AOAO would take an opportunity
> to attack [the Bowers] and their position with regard to the
> alleged alterations and modifications at [the Project]; 2)
> given the nature of the allegations against [the Bowers],
> [the Bowers] could not allow said assertions to stand
> unchallenged; 3) in its Memorandum in Support of [AOAO's
> MSJ], the AOAO failed to disclose the existence of adverse
> legal authority to the Court, a violation of Rule 3.3(a) of
> the Hawaii Rules of Professional Conduct, and failed to
> advise the Court of relevant facts which bear on the outcome
> of the Motion, a violation of Rule 3.3(d) of the same Rules;
> and 4) . . . the AOAO is seeking declaratory relief, yet the
> AOAO's Complaint in Intervention . . . makes no prayer for
> declaratory relief, another fact not mentioned by the AOAO.

The Bowers also argued that the circuit court was "without power to render a declaratory judgment" because the claims against the Bowers in Civ. No. 04-1-062K had been dismissed pursuant to the Stipulation to Dismiss 04-1-062K and no case or controversy existed.

AOAO filed a reply memorandum, in which it argued that the Bowers had failed to address the issues presented in AOAO's MSJ or to support their opposition memorandum with any legal authority. Further, AOAO argued:

- It is undisputed that the Settlement Agreement expressly precludes the Bowers from filing any opposition to [AOAO's MSJ] and therefore, the Opposition must be stricken by the Court;

- By entering into the settlement agreement with all parties, the Bowers waived any right to challenge the validity and/or enforceability of the [governing documents];

- The Bowers have failed to introduce any admissible evidence that [AOAO] has "attacked" the Bowers with regard to the illegal alterations and improvements to Apartment No[s]. 50 and 180;

- [AOAO's] Complaint in Intervention seeking declaratory relief and the Bowers' Response has never been dismissed and, therefore, an actual case and controversy remains as it pertains to the Grandfathering Amendment;

- The Grandfathering Amendment is valid and enforceable on the basis that the Restated Declaration and Amended Bylaws were properly adopted in accordance with [AOAO's] governing documents and Hawaii statutory law;

- Assuming the Court does not strike the Bower[s'] Opposition on the basis that the settlement agreed upon by the parties in the consolidated action is not otherwise enforceable, [AOAO] is entitled to an order from this Court setting aside the [Stipulation to Dismiss 04-1-062] and, therefore, [AOAO] requests this Court issue an immediate trial setting on said matter.

- [AOAO] is entitled to an award of attorneys' fees and costs in connection with [the] filing of this Reply Memorandum on the basis that the Bowers violated the express terms of the settlement agreed upon by the parties by filing their Opposition.

On March 11, 2008, the circuit court held a hearing on AOAO's MSJ. The Bowers' counsel argued that the Bowers had agreed to not oppose AOAO's grandfathering proposal and grandfathering procedure; however, the Bowers were compelled to oppose AOAO's MSJ. This is because, according to the Bowers' counsel, in AOAO's MSJ, AOAO had made "unproven allegations relating to the Bowers" (apparently a reference to AOAO's

21

assertion that the Bowers had made unauthorized and illegal alterations and additions to Units 50 and 180), and the Bowers had to state their opposition to the unproven allegations on the record. The circuit court indicated that it could interpret the Bowers' argument thusly: AOAO breached the settlement agreement by making the unproven allegations about the Bowers; therefore, even though according to the terms of the settlement agreement the Bowers were precluded from opposing AOAO's MSJ, they could oppose the motion because AOAO breached the settlement agreement. The circuit court went on to state that if the court found the settlement agreement had been breached and thereby rendered invalid, the parties would have to go to trial. The Bowers' counsel and the circuit court subsequently engaged in the following exchange:

> THE COURT: Okay. What's the option, then, I'm asking you.
>
> [The Bowers' counsel]: Your option, frankly, is to -- now that I've put these things on the record.
>
> THE COURT: Yes.
>
> [The Bowers' counsel]: Now your option now is, I think, to say that --
>
> THE COURT: That settlement agreement wasn't violated.
>
> [The Bowers' counsel]: Right.
>
> THE COURT: Right? That's --
>
> [The Bowers' counsel]: Right, right. That's right.
>
> THE COURT: And I'm not considering your opposition.
>
> [The Bowers' counsel]: As long as my opposition is on the record.
>
> THE COURT: Okay. I understand.
>
> [The Bowers' counsel]: Okay.

The Bowers' counsel later stated, "[I]f the Court is going to grant [AOAO's MSJ], that's okay, I guess."

AOAO's counsel, in addition to contending that the Bowers' counsel was attempting to "blow hot and cold" with regard to the settlement agreement, stated that AOAO intended to request attorney's fees with regard to its reply in support of AOAO's MSJ. AOAO's counsel argued that were it not for the Bowers'

violation of the terms of the settlement agreement, which precluded the Bowers from opposing AOAO's MSJ, AOAO would not have had to file the reply. The Bowers' counsel objected to AOAO's request for fees relating to its reply.

With respect to AOAO's MSJ, the circuit court ruled:

> The Court finds there's no genuine issue of material fact that the settlement agreement is valid.
>
> Within the settlement agreement, the Bowers waived any legal right to challenge the validity or enforceability of the [governing documents]. Therefore, the Court will not consider the opposition filed by the Bowers.
>
> The movant in this matter has not attacked the Bowers in the subject matter. An actual case of [sic] controversy exists by virtue of [AOAO']s complaint in intervention seeking relief. The grandfathering amendment is valid and enforceable on the basis that the [governing documents] were properly adopted.
>
> So the motion for summary judgment sought in the complaint in intervention is granted.

The circuit court also orally awarded AOAO attorney's fees for preparing and filing the reply in support of AOAO's MSJ.

On April 22, 2008, the circuit court filed its FOF/COL/Order, which provided in part:

### CONCLUSIONS OF LAW

. . . .

> 54. Settlement or compromise agreements are reviewed under contact [sic] law. *Dowsett v. Cashman*, 2 Haw. App. 77, 83, 625 P.2d 1064, 1068 (Haw. App. 1981).
>
> 55. Like other contracts, a settlement agreement "requires an offer and acceptance, consideration, and parties who have the capacity and authority to agree as they do." *Id.* It also requires the parties to agree on all material elements or terms of the settlement agreement. *Honolulu Rapid Transit v. Paschoal*, 51 Haw. 19, 26-27, 449 P.2d 123, 127 (1968).
>
> 56. Settlement agreements cannot be set aside except on the grounds adequate to justify the rescission of a contract. *Dowsett*, 2 Haw. App. at 83, 625 P.2d at 1068.
>
> 57. The Settlement Agreement as between [AOAO], the Bowers and Schooleys is a valid and binding contract and contains the essential and material terms and conditions of the settlement in the Consolidated Actions, which is set forth in the Revised Settlement Letter.
>
> 58. Under the Settlement Agreement, the Bowers agreed not to oppose or otherwise obstruct [AOAO's] Grandfathering Amendment and further agreed not to oppose [AOAO's MSJ].

59. Under the terms of the Settlement Agreement, the Bowers waived their legal right to challenge the validity and enforceability of the [governing documents] and therefore, the Court could not consider the Bowers['] opposition to [AOAO's MSJ].

60. [AOAO] did not "attack" the Bowers in [AOAO's MSJ] with regard to the alterations and additions to Apartment Nos. 50 and 180, but simply restates the factual and procedural history of the Consolidated Actions, including what the Bowers have previously admitted.

61. An actual case or controversy exists in [sic] by virtue of [AOAO's Complaint in Intervention] seeking declaratory relief that was filed by [AOAO] in connection with Civil No. 06-1-010K and the Response filed by the Bowers, which denied each and every allegation asserted, including the declaratory relief sought by [AOAO].

62. [AOAO's] Complaint in Intervention along with the Bowers['] Response was not dismissed nor was it in any way affected by the partial dismissal filed in Civil No. 06-1-010K.

63. The operative document in the creation of a condominium project is the project's declaration. *State Sav. & Loan v. Kauian Dev. Co.*, 50 Haw. 540, 548, 445 P.2d 109, 116 (Haw. 1968). The interests of all owners in the property are governed by [the] condominium's declarations. *See Ass'n of Owners of Kukui Plaza v. City & County of Honolulu*, 7 Haw. App. 60, 70, 742 P.2d 974, 981 (Haw. App. 1987). Any amendment to a condominium's declaration and/or bylaws, which is duly passed in accordance with the provisions of those documents, are deemed valid and enforceable under Hawaii law. See *D'Elia v. Ass'n of Apartment Owners of Fairway Manor*, 2 Haw. App. 347, 632 P.2d 296 (Haw. App. 1981).

64. [AOAO's] Restated Declaration, as amended, and the Amended Bylaws were properly amended in accordance with the provisions of those documents and are therefore deemed valid and enforceable under Hawaii law.

65. Under Hawaii law, both material and non-material alterations and additions caused to the common elements by the owners are legal and valid; provided such alterations and additions receive the requisite percentage approval of the owners and the board of directors, if necessary, in accordance with the declaration and/or bylaws. *See* H.R.S § 514A-89.

66. Structural alterations materially different from KKSRC's Condominium Map(s) require (1) an amendment to the Restated Declaration, (2) approval by the owners at the Project pursuant to H.R.S § 514A-89 and Section 16 of the Restated Declaration (which requires approval of not less than 75% of the owners), and (3) approval of all owners whose apartments are directly affected.

67. Nonmaterial structural alterations only require approval by the Board under H.R.S. § 514B-140(c), and not less than 50% of the owners pursuant to Sections 8.03(1) and 8.06 of the Amended Bylaws.

68.    Nonmaterial alterations do not require an amendment to the Restated Declaration.  *See* Sections 8.03 and 8.05 of the Amended Bylaws.

69.    Minor alterations and additions to the use of the common elements at the KKSRC Project do not require an amendment to the Restated Declaration.  *See* Restated Declaration, as Amended.

70.    Any alterations not covered by H.R.S. § 514B-38(3)(A) or (B), can be approved by the Board as hindrance in the use, or the encroachments into, the common elements under H.R.S § 514B-104(a)(9), and the owners at the Project need only approve these types of alterations and additions under Section 9(c) of the Restated Declaration.

71.    The owners at the Project properly approved all identified unauthorized and illegal alterations and additions made to the common elements at the Project over the past thirty years, as identified in Schedules "A" and "B" . . . and [agreed] to permit said unauthorized and illegal alterations and additions to remain by amending the Restated Declaration and Condominium Map(s), where appropriate, and waive any requirement to submit plans and specifications for the alterations and additions that would otherwise be required under Section 16 of the Restated Declaration and Section 8.03(1) of the Amended Bylaws, in accordance with the  Restated Declaration, as amended, the Amended Bylaws, as well as Hawaii statutory law.

72.    [The Board] properly approved the alterations and additions identified on Schedules "A" and "B".

73.    The Grandfathering Amendment is valid and enforceable on the basis that the Restated Declaration, as amended, and the Amended Bylaws were properly amended.

74.    The Grandfathering Amendment has achieved the "global" resolution and declaratory relief sought by [AOAO] in its Complaint in Intervention to avoid future litigation over the identified unauthorized and illegal alterations and additions made to the common elements at the Project.

75.    [AOAO] shall amend the Restated Declaration and Condominium Map(s) of the Project to accurately reflect the alterations and amendments identified on Schedule "B" that were approved by the owners at the Project.

76.    The Bowers filed their Opposition to [AOAO's MSJ] in direct violation of the settlement agreement.

77.    [AOAO] is entitled to an award of attorneys' fees and costs in filing a reply memorandum in support of [AOAO's MSJ], which would not have been necessary if the Bowers complied with the Settlement Agreement.

### ORDER GRANTING [AOAO'S MSJ] IN CIVIL NO. 06-1-010K SEEKING DECLARATORY RELIEF AS ASSERTED IN THE COMPLAINT FILED HEREIN

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

78.    Summary Judgment is hereby entered in favor of [AOAO] and against all other Defendants as to [AOAO's MSJ] seeking declaratory relief and that all identified unauthorized and illegal alterations and additions made to

the common elements at the Project over the past thirty years, as identified in Schedules "A" and "B" . . . ,have been properly approved by the owners at the Project through a Grandfathering Amendment in accordance with [AOAO's governing documents], as well as Hawaii Statutory law.

79. [AOAO] shall amend the Restated Declaration and Condominium Map(s), where appropriate, to accurately reflect the alterations and amendments as identified on Schedule "B".

80. [AOAO] is entitled to an award of attorneys' fees and costs in the amount of $3,744.00 in filing a reply memorandum support of [AOAO's MSJ].

(Footnote omitted.)

On May 2, 2008, the Bowers filed the Motion to Clarify FOF/COL/Order, in which they argued that a Finding of Fact (FOF) and various Conclusions of Law (COLs) needed clarification to resolve questions that might be raised on appeal and to aid them in determining if an appeal would be appropriate.  On May 12, 2008, AOAO filed a memorandum in opposition to the motion, arguing the following, in sum:

• The Subject Motion is just another attempt by the Bowers to reargue matters that have been before this court;

• It is undisputed that the parties entered into a binding Settlement Agreement on January 25, 2008;

• The Bowers waived their legal right to challenge the validity of the Restated Declaration, as amended, and the Amended Bylaws, including the manner in which they were previously adopted; and

• The validity and enforceability of the Grandfathering Amendment is preconditioned upon the Court's ruling that the Restated Declaration, as Amended, and the Amended Bylaws were properly adopted in 1998.

On May 15, 2008, the Bowers filed a reply memorandum, in which they argued in sum that the settlement agreement was never finalized and the circuit court lacked jurisdiction to make any FOFs or COLs not directly related to the Complaint in Intervention.

On May 27, 2008, the circuit court filed its Order Denying Bowers' Motion to Clarify FOF/COL/Order.

## J.   ATTORNEY'S FEES AND COSTS MOTIONS

On May 23, 2008, the Bowers filed their Fees/Costs Motion, in which they requested an award of attorney's fees and

costs. On June 4, 2008, AOAO filed a memorandum in opposition to the motion and the Bowers filed a reply on June 9, 2008.

On May 23, 2008, AOAO filed its Fees/Costs Motion, in which it requested an award of attorney's fees and costs. On June 4, 2008, the Bowers filed a memorandum in opposition. The Bowers argued that the circuit court should deny the motion because: (1) they, not AOAO, "were the prevailing parties in Civil No. 04-1-0062K, due to [AOAO's] voluntary dismissal with prejudice of its claims in said action"; (2) AOAO was barred in Civil No. 06-1-010K from "re-litigating the issue of any alleged violations by [the Bowers] of [AOAO's] governing documents based on the doctrine of collateral estoppel"; (3) the alleged settlement agreement was not before the circuit court and the circuit court must disregard it in ruling on the motion; and (4) AOAO did not provide an adequate foundation or evidentiary support for its factual allegations in the motion. On June 9, 2008, AOAO filed a reply memorandum.

On June 27, 2008, AOAO filed a "Supplemental Briefing as to the Reasonableness of Attorneys' Fees and Costs" (AOAO's Supplement Re Fees/Costs). AOAO argued that if the circuit court awarded fees and costs to the Bowers, the attorney's fees requested by the Bowers should be reduced by 50% to 60% and the requested taxable costs should also be significantly reduced. The Bowers filed a reply.

On July 10, 2008, the circuit court filed its Order Re Fees/Costs. The circuit court granted AOAO's Fees/Costs Motion and awarded AOAO $121,778.51 in attorney's fees and $1,359.49 in costs. The circuit court also granted the Bowers' Motion for Fees/Costs and awarded them attorney's fees in the amount of $122,593 and costs in the amount of $7,062.62, but the amounts the circuit court awarded in attorney's fees and costs were significantly below the amounts the Bowers had requested.

The Bowers filed their Motion to Reconsider Order Re Fees/Costs, to which AOAO filed a memorandum in opposition. On August 11, 2008, the circuit court filed an order denying the Bowers' Motion to Reconsider Order Re Fees/Costs (Order Denying Bowers' Motion to Reconsider Order Re Fees/Costs).

On August 20, 2008, the Bowers filed a motion asking the circuit court to issue FOFs and COLs for the Order Denying Bowers' Motion to Reconsider Order Re Fees/Costs. On August 28, 2008, AOAO filed a memorandum in opposition. On September 8, 2008, the circuit court filed its Order Denying Bowers' Motion for FOF/COL Re Order Denying Bowers' Motion to Reconsider Order Re Fees/Costs.

## II.   STANDARDS OF REVIEW

### A.   SUMMARY JUDGMENT

"An award of summary judgment is reviewed de novo under the same standard applied by the circuit court." *French v. Hawai'i Pizza Hut, Inc.*, 105 Hawai'i 462, 466, 99 P.3d 1046, 1050 (2004) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22 (1992)) (other citations omitted). The standard for granting a motion for summary judgment is well settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.
>
> *Bremer v. Weeks*, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (quoting *Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (citations, internal quotation marks, and some brackets omitted)) (emphases added).

Taniguchi v. Ass'n of Apt. Owners of King Manor, Inc., 114 Hawai'i 37, 46, 155 P.3d 1138, 1147 (2007) (emphasis in original omitted).

### B.   HARMLESS ERROR

Hawai'i Rules of Civil Procedure (HRCP) Rule 61 provides in relevant part:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

In addition, Hawaii Rules of Evidence (HRE) Rule 103(a) provides in relevant part: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"

### C. JURISDICTION

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. . . . A judgment rendered by a circuit court without subject matter jurisdiction is void." Fisher v. Grove Farm Co., 123 Hawai'i 82, 94, 230 P.3d 382, 394 (App. 2009) (quoting Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152, 107 Hawai'i 178, 182, 111 P.3d 587, 591 (2005)).

### D. FOFs/COLs

This court reviews the trial court's [FOFs] under the clearly erroneous standard. *Beneficial Hawai'i, Inc. v. Kida*, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001).

[An FOF] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. [An FOF] is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Id.* (internal citations, quotation marks, brackets, and block quotation format omitted). [COLs] are reviewed de novo. *Id.*

Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 112, 58 P.3d 608, 623 (2002).

### E. STATUTORY INTERPRETATION

[The Hawai'i Supreme Court] has often stated that the fundamental starting point for statutory interpretation is the language of the statute itself. Where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Where . . . the operative language . . . is undefined in a statute, we presume that the words in question were used to express their meaning in common language.

Schmidt v. Bd. of Dirs. of Ass'n of Apt. Owners of Marco Polo Apts., 73 Haw. 526, 531-32, 836 P.2d 479, 482 (1992) (internal

quotation marks, citations, and brackets and ellipsis in original omitted).

### F.   ATTORNEY'S FEES AND COSTS AWARDS

"The trial court's rulings concerning the award of attorneys' fees and costs are generally reviewed under the abuse of discretion standard." Ass'n of Apt. Owners of Wailea Elua, 100 Hawaii at 120, 58 P.3d at 631.

### III.   DISCUSSION

### A.   The Bowers' 7/2/07 MSJ

The Bowers contend the circuit court erred by finding that the Koontz e-mails submitted by the Bowers in support of the Bowers' 7/2/07 MSJ were inadmissible for lack of foundation and in denying their motion. The Bowers argue that Ann authenticated the Koontz e-mails and the e-mails were not hearsay.

However, in addition to finding that there was a genuine issue of material fact as to the foundation for the admission of the Koontz e-mails, the circuit court found that there were genuine issues of material fact as to "the scope of approval, if any, given in the Koontz e[-]mails" and whether the Bowers' reliance on the Koontz e-mails was reasonable. Without addressing whether the Bowers laid a sufficient foundation for the admission of the Koontz e-mails, we conclude that the circuit court did not err in denying the Bowers' 7/2/07 MSJ on the grounds that there were genuine issues of material fact regarding the scope of the approval given in the Koontz e-mails and whether the Bowers' reliance on such e-mails was reasonable. Thus, any error by the circuit court in ruling on the admissibility of the Koontz e-mails was harmless.

### B.   The Bowers' 12/18/07 MSJ

The Bowers argue the circuit court applied the wrong legal standard in denying the Bowers' 12/18/07 MSJ. They contend that instead of applying the correct standard, which requires the existence of a genuine issue of material fact, the circuit court denied their 12/18/07 MSJ by applying a standard that only required a "scintilla of evidence" supporting AOAO's opposition to the motion. Citing Yoneda v. Tom, 110 Haw. 367, 133 P.3d 796 (2006), the Bowers contend that their motion for summary judgment

could not be defeated by the mere existence of a scintilla of evidence supporting AOAO's opposition.

We are not persuaded that the circuit court applied the wrong standard in denying the Bowers' 12/18/07 MSJ. The circuit court began its ruling by referencing the correct standard: "[T]he Court finds there's a genuine issue of material fact." It then, however, went on to state, "[a]s counsel know that credibility, even a scintilla of evidence raising a trivial dispute on a material fact is sufficient to deny a motion for summary judgment." Although it is not clear what the circuit court meant by its "scintilla of evidence" comment, the reference to credibility suggests that it may simply have been noting that disputes over material facts that turn on credibility determinations are sufficient to defeat summary judgment. In any event, we conclude that AOAO's opposition to the Bowers' 12/18/07 MSJ raised genuine issues of material fact sufficient to defeat the Bowers' motion, and accordingly, the circuit court did not err in denying the Bowers' 12/18/07 MSJ.

C. Jurisdiction over the Settlement Agreement

The circuit court concluded that the parties had entered into a valid and binding settlement agreement, the material terms of which were set forth in the January 25, 2008, Revised Settlement Letter. See FOF/COL/Order FOF 41 and COL 57. The Revised Settlement Letter was prepared by AOAO's counsel and signed as "agreed and accepted" by counsel for the Bowers and the Schooleys. For purposes of our analysis, we will treat the Revised Settlement Letter as the parties' settlement agreement.

The Bowers argue that in granting AOAO's MSJ, the circuit court erroneously made findings regarding the settlement agreement and other issues concerning the validity and enforceability of the governing documents. The Bowers contend that the circuit court did not have subject matter jurisdiction over the settlement agreement because: (1) a stipulation for dismissal with prejudice of all claims and all parties was filed in Civil No. 04-1-062K and a stipulation for partial dismissal with prejudice was filed in Civil No. 06-1-010K (collectively, Stipulations for Dismissal); (2) the only remaining claims

31

related to AOAO's Complaint in Intervention in Civil No. 06-1-010K; and (3) the settlement agreement was not related to AOAO's Complaint in Intervention.  The Bowers further contend that because the circuit court lacked jurisdiction over the settlement agreement once the Stipulations for Dismissal had been filed, the circuit court erred in finding that: (1) the terms of the settlement agreement precluded the Bowers from opposing the Grandfathering Amendment and AOAO's MSJ; and (2) the Bowers waived their legal right to challenge the validity and enforceability of the governing documents under the terms of the settlement agreement.  Based on these contentions, the Bowers assert that in the FOF/COL/Order, FOFs 47 and 48 are clearly erroneous and COLs 57, 58, 59, 64, 73, 76, and 77 are wrong.

We reject the Bowers' contention that the circuit court lost jurisdiction over the settlement agreement once the Stipulations for Dismissal were filed.  We conclude that the settlement agreement was binding on the Bowers and that the circuit court was entitled to make findings based on the settlement agreement in ruling on AOAO's MSJ.  We further conclude that by virtue of the settlement agreement and the Stipulation to Amend, the Bowers waived the right to oppose the Grandfathering Amendment and AOAO's MSJ.  As a result of that waiver, the Bowers are precluded from raising in this litigation claims that would attack the validity of the Grandfathering Amendment or AOAO's entitlement to summary judgment on its Complaint in Intervention.

1.

The Bowers cite to Amantiad v. Odum, 90 Hawai'i 152, 158, 977 P.2d 160, 167 (1999), in support of their claim that the circuit court lost jurisdiction over the settlement agreement once the Stipulations for Dismissal were filed.  Amantiad, however, is distinguishable in that the dismissal in that case terminated the litigation.  Id. at 159-60, 977 P.2d at 167-68.  Here, the Stipulations for Dismissal did not terminate the litigation in the consolidated cases; the Complaint in Intervention still remained.  Indeed, as part of the settlement agreement, the parties agreed that the "Complaint for

32

Intervention will not be dismissed and therefore, remains part of Civil No. 06-1-010K." Because the litigation had not been terminated by the Stipulations for Dismissal, the circuit court retained jurisdiction over the settlement agreement.

2.

Pursuant to the settlement agreement and the Stipulation to Amend, the Bowers agreed not to oppose the Grandfathering Amendment or AOAO's MSJ. The settlement agreement provided in pertinent part that

> in furtherance of [AOAO's Complaint in Intervention] seeking a global resolution of all listed improvements/alterations constructed in violation of [AOAO']s governing documents, including improvements/alterations which are the subject of Civil No. 04-1-062K, [the] Bowers agree[] not to oppose or otherwise obstruct [AOAO's] legal efforts to obtain judicial approval of the owners' approval of the alterations/ additions and their consent to amendment of the Declaration of Condominium Property Regime and Condominium Map of KKSRC.

In addition, the Stipulation to Amend provided in pertinent part:

> WHEREAS, [AOAO] intends to file a motion for summary judgment as to [AOAO's Complaint in Intervention] seeking approval of the owners' approval of the alterations/ additions and consent to amendment of the Declaration of Condominium Property Regime and Condominium Map of KKSRC . . . , which, in furtherance of the settlement reached by the parties, shall not be opposed by any of the Defendants to this consolidated action.

AOAO filed its MSJ seeking circuit court approval for the Grandfathering Amendment and a declaratory judgment that the Grandfathering Amendment was valid. Despite their agreement not to oppose the Grandfathering Amendment or AOAO's MSJ, the Bowers filed a memorandum in opposition to AOAO's MSJ. In their opposition, the Bowers contended that although they had agreed to allow AOAO to pursue court approval of the Grandfathering Amendment, they were compelled to oppose AOAO's MSJ because AOAO had "attack[ed] [the Bowers] and their position with regard to the alleged alterations and modifications at [the Project] . . . ."

We conclude that the Bowers did not have a valid justification for opposing the Grandfathering Amendment and AOAO's MSJ given their specific agreement to refrain from such action. As the circuit court found, AOAO did not "attack" the Bowers in AOAO's MSJ, but merely restated the "factual and

33

procedural history of the Consolidated Actions." Moreover, any alleged "attack" of the Bowers in AOAO's MSJ did not amount to a breach of the settlement agreement or provide a valid ground for the Bowers to rescind the settlement agreement. See, e.g., Bischoff v. Cook, 118 Hawaiʻi 154, 163, 185 P.3d 902, 911 (App. 2008) (concluding that the remedy of rescission of a real estate contract was not warranted where the trial court did not find that "Cook had committed a breach of contract, let alone a material breach, or identify any other ground for abrogating the contract"); Golf Carts, Inc. v. Mid-Pacific Country Club, 53 Haw. 357, 359, 493 P.2d 1338, 1339 (1972) ("A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement." (internal quotation marks omitted)). Indeed, at the hearing on AOAO's MSJ, counsel for the Bowers indicated that he did not want to rescind the settlement agreement, but merely wanted to place the Bowers' objection to AOAO's "attack" on the record.

We conclude that AOAO did not breach the settlement agreement by filing its MSJ. Therefore, the Bowers remained bound by their agreement not to oppose the Grandfathering Amendment or AOAO's MSJ. The circuit court did not err in enforcing the settlement agreement and in refusing to consider the Bowers' opposition to the Grandfathering Amendement or AOAO's MSJ.

D. **Challenges to the Grandfathering Amendment and the Granting of AOAO's MSJ**

The Bowers raise claims related to the validity of the Grandfathering Amendment and the circuit court's granting of AOAO's MSJ. They argue that: (1) the Grandfathering Amendment was invalid because it was adopted pursuant to prior amendments to the governing documents that were invalid; and (2) the prior amendments to the governing documents were invalid because they were based on the unlawful retroactive application of statutes passed by the Legislature. The Bowers also challenge the circuit court's granting of AOAO's MSJ on the ground that all necessary

parties for the relief ordered by the circuit court were not present in the litigation.

We do not address the merits of these claims. Instead, we reject the Bowers' claims on the basis that the Bowers waived the right to raise these claims in this case as the result of the Bowers' entry into the settlement agreement and the Stipulation to Amend.

### E.    Attorney's Fees and Costs Awards

The Bowers in their appeal and AOAO in its cross-appeal challenge the attorney's fees and costs awarded by the circuit court. The circuit court determined, pursuant to HRS § 514A-94 (Supp. 2005),[8] that both the Bowers and AOAO had substantiated their respective "claims" and therefore were entitled to recover their attorney's fees and costs. The circuit court ruled that AOAO had substantiated its claim brought against the Bowers for additions and alterations made to Units 50 and 180 in violation of the governing documents and awarded AOAO $121,778.51 in attorney's fees and $1,359.49 in costs. The circuit court also ruled that the Bowers had substantiated their claim brought against AOAO that there were widespread violations of the governing documents by other unit owners and awarded the Bowers $122,593 in attorney's fees and $7,026.62 in costs. The circuit court additionally awarded attorney's fees and costs of $3,744 to AOAO for having to file a reply to the Bowers' memorandum in opposition to AOAO's MSJ. The net effect of these awards was a total of $2,737.62[9] in favor of the Bowers.

We conclude that the circuit court misapplied HRS § 514-94 in awarding attorney's fees and costs to the Bowers and in awarding attorney's fees and costs to AOAO. We further conclude that the circuit court failed to make sufficient findings to support its award of attorney's fees and costs

---

[8] HRS § 514A-94 has been replaced by HRS § 514B-157 (2006) "with respect to events and circumstances occurring on or after July 1, 2006." HRS § 514B-22 (2006). For purposes of our analysis, there are no relevant differences between HRS § 514A-94 and HRS § 514-157, and we will refer to the provisions of HRS § 514A-94 in our analysis.

[9] The Amended Final Judgment incorrectly states this figure as $2,737.61.

relating to AOAO's reply. Accordingly, we vacate the circuit court's awards of attorney's fees and costs and remand for further proceedings.

1.

As noted, the circuit court awarded attorney's fees and costs pursuant to HRS § 514A-94, which provides in relevant part:

> (a) All costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of the association for:
>
> . . . .
>
> (3) _Enforcing_ any provision of the declaration, bylaws, house rules, and the Condominium Property Act; or the rules of the real estate commission;
>
> against an owner, occupant, tenant, employee of an owner, or any other person who may in any manner use the property shall be promptly paid on demand to the association by such person or persons; _provided that if the claims upon which the association takes any action are not substantiated_, all costs and expenses, including reasonable attorneys' fees, incurred by any such person or persons as a result of the action of the association, shall be promptly paid on demand to such person or persons by the association.
>
> (b) _If any claim by an owner is substantiated in any action against an association, any of its officers or directors, or its board of directors to enforce any provision of the declaration, bylaws, house rules, or this chapter_, then all reasonable and necessary expenses, costs, and attorneys' fees incurred by an owner shall be awarded to such owner; provided that no such award shall be made in any derivative action unless:
>
> (1) The owner first shall have demanded and allowed reasonable time for the board of directors to pursue such enforcement; or
>
> (2) The owner demonstrates to the satisfaction of the court that a demand for enforcement made to the board of directors would have been fruitless.
>
> If any claim by an owner is not substantiated in any court action against an association, any of its officers or directors, or its board of directors to enforce any provision of the declaration, bylaws, house rules, or this chapter, then all reasonable and necessary expenses, costs, and attorneys' fees incurred by an association shall be awarded to the association, unless the action was filed in small claims court or prior to filing the action in a higher court the owner has first submitted the claim to mediation, or to arbitration under part VII of this chapter, and made a good faith effort to resolve the dispute under any of those procedures.

(Emphases added.)

In this case, AOAO brought a claim to enforce the governing documents against the Bowers by filing the 04-1-062K Complaint, seeking, among other things, an order requiring the Bowers to remove all non-conforming alterations and additions to their Units 50 and 180 to comply with the governing documents. The Bowers asserted as a defense to AOAO's claim for enforcement that AOAO's failure to enforce the governing documents with respect to similar and widespread non-conforming alterations and additions by other unit owners precluded AOAO from enforcing the governing documents against the Bowers under the doctrines of estoppel, acquiescence, waiver, and abandonment. However, because the parties agreed to resolve their dispute through a settlement agreement, neither the merits of AOAO's enforcement claim nor the Bowers' defense to that claim was decided. Instead, the settlement agreement, which called for the adoption of the Grandfathering Amendment to legitimize all prior non-conforming alterations and additions, rendered AOAO's enforcement claim and the Bowers' defense to that claim moot.

In Schmidt v. Bd. of Dirs. of the Ass'n of Apt. Owners of the Marco Polo Apts., 73 Haw. 526, 836 P.2d 479 (1992), the Hawai'i Supreme Court explained how HRS § 514A-94(b) was intended to apply in light of the statute's use of the term "enforce." The court reasoned as follows:

> Black's Law Dictionary (6th ed. 1990) defines "enforce," *inter alia*, to mean "[t]o put into execution, to cause to take effect; . . . to compel obedience to." Id. at 528. Webster's Encyclopedic Unabridged Dictionary of the English Language (1989) defines "enforce," *inter alia*, to mean "to . . . compel obedience to; . . . to impose (a course of action) upon a person . . . ." Id. at 473.
>
> Thus, the "plain and obvious" application of HRS § 514A-94(b) is to an owner's substantiated claim against an association or its board to impose an *affirmative* course of action upon the association to put into execution -- or to compel obedience to -- any provision of its declaration, by-laws, house rules, or any enumerated provision of HRS chapter 514A.

Id. at 532, 836 P.2d at 482-83 (brackets, ellipsis points, and emphasis in original).

In Schmidt, the owners of a condominium, the Schmidts, had sued the association, alleging that it breached its duty,

pursuant to the declaration and by-laws of the association, to maintain the common areas, resulting in water leakage that caused damage to the Schmidts' unit.  Id. at 528, 836 P.2d at 481.  The supreme court held that the Schmidts, who prevailed at trial, were not entitled to attorney's fees under HRS § 514A-94(b).  Id. at 533, 836 P.2d at 483.  This is because

> the Schmidts did not seek to enforce any *affirmative* action on the part of the [a]ssociation to comply with any provision of the [a]ssociation's declaration, by-laws, house rules, or HRS chapter 514A; rather, in their own words, they were "seeking damages for the [a]ssociation's failure to comply with the By-Laws and Declaration."

Id. (brackets and ellipsis points in original omitted; emphasis in original).

2.

We conclude that the circuit court erred in awarding attorney's fees and costs to the Bowers pursuant to HRS § 514A-94.  The circuit court awarded attorney's fees and costs to the Bowers on the basis that the Bowers had substantiated their claim that there were widespread violations of the governing documents by other unit owners.  However, under Schmidt, for an owner to be entitled to attorney's fees and costs pursuant to HRS § 514A-94, the owner's claim must seek to enforce "affirmative action on the part of the association" to "compel obedience to" the association's declaration, by-laws, or house rules, or to HRS chapter 514A.  See id. at 532, 836 P.2d at 482-83.  The Bowers' claim of widespread violations by other unit owners was not asserted to enforce or compel obedience to the governing documents, but rather was asserted as a defense to AOAO's enforcement action under the doctrines of estoppel and waiver.  Indeed, the Bowers raised their claim of widespread violations *to preclude* AOAO from enforcing the governing documents against them.  Thus, the Bowers were not entitled to attorney's fees and costs pursuant to HRS § 514A-94 based on their claim of widespread violations.

AOAO's 04-1-062K Complaint against the Bowers, which sought to compel the Bowers to remove all non-conforming alterations and additions to their units, clearly qualified as a claim to enforce the governing documents.  However, pursuant to

38

the settlement agreement, the 04-1-062K Complaint was dismissed with prejudice. Moreover, as a result of the Grandfathering Amendment, the Bowers were not required to remove the alleged non-conforming alterations and additions to their units. Under these circumstances, we conclude that AOAO did not substantiate its claim for enforcement of the governing documents against the Bowers under HRS § 514A-94. Therefore, the circuit court erred in awarding attorney's fees and costs to AOAO pursuant to HRS § 514A-94.

We note that HRS § 514A-94(a) provides that an owner is entitled to recover the owner's attorney's fees and costs "if the claims upon which the association takes any action are not substantiated." We do not preclude the possibility that in a case where the association's enforcement claim is not resolved on the merits because of a settlement agreement, a court could determine that a claim for enforcement was neither "substantiated" nor "not substantiated." See Cunningham v. Waford, 965 P.2d 201, 205-06 (Idaho Ct. App. 1998) (concluding that there was no prevailing party when litigation was resolved through a settlement agreement); Boxer Max Corp. v. Cane A. Sucre, Inc., 905 So. 2d 916, 918 (Fla. Dist. Ct. App. 2005) (same); see also In re Estate of Wolf, 777 N.W.2d 119, 123-26 (Wis. Ct. App. 2009) (indicating that there may be no prevailing party as the result of a settlement). We remand the case for the circuit court to consider whether the Bowers are entitled to attorney's fees and costs under HRS § 514A-94(a) on the theory that AOAO failed to substantiate its claim for enforcement.

3.

The circuit court apparently relied upon its inherent power to impose sanctions to control the litigation process in awarding attorney's fees and costs of $3,744 to AOAO for its preparation of the reply to the Bowers' memorandum in opposition to AOAO's MSJ. In Kaina v. Gellman, 119 Hawai'i 324, 331, 197 P.3d 776, 783 (App. 2008), this court held that a "court may not invoke its inherent powers to sanction a represented party without a specific finding of bad faith." Here, the circuit court did not make a specific finding of bad faith in connection

with its award of attorney's fees and costs to AOAO for AOAO's preparation of the reply. Accordingly, we vacate the award of the $3,744 to AOAO. The circuit court may consider whether there is an appropriate basis for exercising its inherent power to impose sanctions and, if so, to make the necessary findings on remand.

### F. Other Matters

Points of error raised by the Bowers that have not been specifically addressed are rejected as lacking merit.

### IV. CONCLUSION

We vacate the portions of the circuit court's September 9, 2008, Amended Final Judgment that awarded attorney's fees and costs to AOAO and that awarded attorney's fees and costs to the Bowers, and we remand the case for further proceedings consistent with this Memorandum Opinion. We affirm the Amended Final Judgment in all other respects.

DATED: Honolulu, Hawai'i, April 13, 2011.


On the briefs:

Kenneth A. Ross
(Law Offices of Kenneth A. Ross)
Dana R.C. Lyons
(Rush Moore LLP)
for Defendants-Appellants/
Cross-Appellee

S. V. (Bud) Quitiquit
Danielle N. Degele-Mathews
(Brooks Tom Porter &
Quitiquit, LLP)
for Plaintiff-Appellee/
Cross-Appellant

*Craig H. Nakamura*
Chief Judge

*[signature]*
Associate Judge